Opinion issued May 9, 2002
















In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00027-CR

____________


ANTONYO TERRELL SPIGHT, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 232nd District Court

Harris County, Texas

Trial Court Cause No. 843344






O P I N I O N

 Appellant, Antonyo Terrell Spight, was charged by indictment with possession
with intent to manufacture or deliver cocaine weighing more than 400 grams. After
the trial court denied his motion to suppress evidence, appellant pleaded guilty and,
pursuant to a plea agreement with the State, was sentenced to 15 years confinement. 
In three points of error, appellant contends the trial court erred in denying his motion
to suppress evidence because: (1) reasonable suspicion did not exist to justify his
"prolonged detention," (2) there was no probable cause for his arrest, and (3) a second 
pat-down search of his person was illegal. We affirm.

Background

 Texas Department of Public Safety Trooper Lawrence Lily testified that, at
10:33 p.m. on April 30, 2000, while on patrol and using a radar device, he determined
that appellant was driving a car at 70 miles per hour in a 55 mile per hour
construction zone on Interstate 10 in Harris County. Trooper Lily turned on his
overhead emergency lights and effected a traffic stop of appellant's car on the side
of the freeway. The stretch of road was dark, and Lily stated there is "a lot of illegal
activity on that road." Using a video camera mounted in his patrol car, Lily
videotaped the entire traffic stop and subsequent search. After appellant stepped out
of his car, he handed his driver's license to Lily before it was requested. Lily saw that
appellant's hands were shaking "tremendously" as he handed over his license. 
Appellant also attempted to give his car rental agreement to Lily before it was
requested. Lily stated that appellant appeared to be very nervous and "unsure of his
answers" to questions. 

 Trooper Lily asked appellant if he had ever been arrested, and appellant told
him he had previously been arrested for "gun charges" and for possession of
marihuana. Because he was patrolling alone, it was dark and late in the evening, and
the appellant was nervous and had been previously arrested on a weapons charge,
Lily feared and suspected that appellant might be armed. Lily tried to calm appellant
by informing him that Lily would only give him a warning. However, appellant
continued to act nervous. 

 As Trooper Lily was writing out the warning, he asked appellant where he was
coming from. Appellant replied that he was visiting a friend in Houston. Appellant
was unsure of his answers, appeared confused, and hesitated in his response as to
where his friend lived. Appellant knew only the nickname of his friend. As Lily
handed appellant the completed traffic warning, appellant, without being questioned, 
volunteered an explanation for one of his previous arrests. Lily then told appellant
that a part of his duty was to look for stolen guns and drugs. He asked appellant
whether he had drugs or stolen weapons in his possession, and appellant stated he did
not. Lily then asked if he could search appellant's car, and appellant said "yes, you
could."

 Trooper Lily testified that, after he issued the warning, he thought that the
appellant was "probably a narcotic carrier." Approximately four and one-half
minutes passed from the time the traffic stop began to the time that Lily asked for
consent to search the car. After appellant consented to the search, Lily conducted a
brief pat-down search of appellant for weapons and found a knife in appellant's
pocket. Lily asked appellant to stand off the roadway, removed the keys from the
ignition of the car, and opened the trunk. Appellant began moving away from the car,
and Lily asked him to step closer to the car and remain in the lighted area. 

 After searching the trunk, Trooper Lily discovered a brick-shaped object, in a
pillowcase on the backseat of the car. Although he did not intend to place appellant
under arrest at this time, Lily, out of a concern for his own safety, placed handcuffs
on appellant. Lily then determined that the brick-shaped object, wrapped in
cellophane, was in fact a bundle of money. Lily thought that appellant might be
involved with guns and drugs. Appellant told Lily that there was $7,000 wrapped in
the cellophane, but it was later determined there was $11,330 wrapped in the
cellophane.

 Trooper Lily asked appellant what he was planning to do with the money, and
appellant replied that he was going to buy a car. As he replied, appellant began
moving back towards his car, and Lily told him to return to where he had been
standing. Based on appellant's behavior, Lily thought that appellant might be
concealing another weapon elsewhere on his body. Lily then conducted a more
thorough pat-down search of appellant, feeling a large bulge near appellant's crotch
area, which, based on his experience, he thought to be a plastic bag containing
powder cocaine. After obtaining and putting on latex gloves, Lily removed from
appellant's pants the plastic bag, which contained more than 400 grams of powder
cocaine. Approximately nine minutes passed from the time that Lily asked for
consent to search the car to the time he pulled the bag of cocaine from appellant's
pants.

 Appellant argues the trial court erred in overruling his motion to suppress
evidence because Trooper Lily's search of his car and his person was in violation of
the Fourth Amendment of the United States Constitution and Article 1, Section 9, of
the Texas Constitution.

Standard of Review

 A trial court's ruling on a motion to suppress evidence will not be set aside
unless there is an abuse of discretion. Villareal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996); Taylor v. State, 945 S.W.2d 295, 297 (Tex. App.--Houston [1st
Dist.] 1997, pet. ref'd). We will afford almost total deference to a trial court's
determination of facts supported by the record, especially when the findings are based
on the evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997). Here, the trial court did not make explicit findings of
historical fact; we, therefore, review the evidence in the light most favorable to the
trial court's ruling. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App.
2000). We assume the trial court made implied findings of fact supported in the
record that buttress its conclusion. Id. Because we do not determine credibility, our
de novo review of reasonable suspicion, probable cause, consent, and mixed
questions of law and facts becomes a de novo review of legal questions. Derrow v.
State, 981 S.W.2d 776, 778 (Tex. App.--Houston [1st Dist] 1998, pet. ref'd) (citing
Ornelas v. United States, 517 U.S. 690, 697-99, 116 S. Ct. 1657, 1661-62 (1996)).

 We note at the outset that the United States Supreme Court has long held that
the "touchstone of the Fourth Amendment is reasonableness." Ohio v. Robinette, 519
U.S. 33, 39, 117 S. Ct. 417, 421 (1996) (emphasis added). Reasonableness is
measured in objective terms by examining the totality of the circumstances. Id. We
steer clear of "bright-line rules" in applying this test because of the "endless
variations in the facts and circumstances" implicating the Fourth Amendment. (1) Id. 

Investigative Detention

 In his first issue, appellant challenges whether reasonable suspicion existed to
justify his "prolonged detention." Circumstances short of probable cause may justify
a temporary investigative detention. Terry v. Ohio , 392 U.S. 1, 15, 88 S. Ct. 1868,
1877 (1968); (2) Stone v. State, 703 S.W.2d 652, 654 (Tex. Crim. App. 1986). An
officer is permitted to make a temporary investigative detention of an individual if the
officer has a reasonable suspicion that some activity out of the ordinary is or has
occurred, some suggestion to connect the detainee with the unusual activity, and some
indication that the activity is related to a crime. Stone, 703 S.W.2d at 654. The
determination of the presence of reasonable suspicion is a factual one and is made and
reviewed by considering the totality of the circumstances at the of time the stop. 
Loesch v. State, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997). Appellant does not dispute his initial detention for the offense of speeding. 
Rather, he argues that Trooper Lily's "continued detention after the issuance of the
warning for speeding was unreasonable under the circumstances." 

 A routine traffic stop is a detention and must be reasonable under both the
United States and Texas constitutions. See Davis v. State, 947 S.W.2d 240, 245 (Tex.
Crim. App. 1997). To be reasonable, a traffic stop must be temporary and last no
longer than is necessary to effectuate the purpose of the stop. See Florida v. Royer,
460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983); Davis, 947 S.W.2d at 243, 245. 
During a traffic stop, it is reasonable for an officer to check for outstanding warrants
and demand identification, a valid driver's license, and proof of insurance from the
driver. See Davis, 947 S.W.2d at 245 n.6. However, once the reason for the
detention has been satisfied, the detention may not be used as a "fishing expedition
for unrelated criminal activity." Id. at 243. An investigative detention "must be
strictly circumscribed by the exigencies which justify its initiation." Terry, 392 U.S.
at 25-26, 88 S. Ct. at 1882. As noted in Terry: 

 The scope of the search must be limited because 'a search which is
reasonable at its inception may violate the Fourth Amendment by virtue 
of its intolerable intensity and scope.'


392 U.S. at 18, 88 S. Ct. at 1878 (emphasis added).

 Appellant contends that his "continued detention" after issuance of the warning
for speeding was unreasonable. He argues that his nervousness, as testified to by
Trooper Lily, did not justify the search of his car and his person. He also argues that
his "unsure answers" to Lily's questions did not support Lily's suspicion that he was
a "narcotic carrier." Finally, appellant concludes that Lily's questions exceeded the
scope of his detention. He argues, citing Robinette and Davis, that once Trooper Lily
gave him his warning for speeding, he could no longer be legally detained. Appellant
misconstrues Robinette and Davis. 

 In Robinette, the Supreme Court addressed the issue of "whether the Fourth
Amendment requires that a lawfully seized defendant must be advised that he is 'free
to go' before his consent to a search will be recognized as voluntary." 519 U.S. at 35,
117 S. Ct. at 419. The court held there is no such requirement. Id. 

 The pertinent facts of Robinette are very similar to the instant case. A sheriff's
deputy determined that Robinette was driving a car at 69 miles per hour in a 45 mile
per hour construction zone. The deputy effected a traffic stop of Robinette, checking
his driver's license and running a computer check. The deputy asked Robinette to
step out of his car, turned on his mounted video camera, returned Robinette's license,
and then issued a verbal warning to Robinette. The deputy then asked, "One question
before you get gone: [A]re you carrying any illegal contraband in your car? Any
weapons of any kind, drugs, anything like that?" After Robinette said he did not, the
deputy asked if he could search his car, and Robinette consented. Upon searching the
car, the deputy found illegal narcotics. Robinette, 519 U.S. at 35-36, 117 S. Ct. at
419.

 The Ohio Supreme Court, affirming an Ohio Court of Appeals reversal of
Robinette's conviction, established a "bright-line prerequisite for consensual
interrogation under these circumstances." Id. 519 U.S. at 36, 117 S. Ct. at 419
(emphasis added). It held as follows:

 The right, guaranteed by the federal and Ohio Constitutions, to be secure
in one's person and property requires that citizens stopped for traffic
offenses be clearly informed by the detaining officer when they are free
to go after a valid detention, before the officer attempts to engage in a
consensual interrogation. Any attempt at consensual interrogation must
be preceded by the phrase 'At this time you legally are free to go' or by
words of similar import."


Id. 519 U.S. at 36, 117 S. Ct. at 419-20 (quoting Ohio v. Robinette, 73 Ohio St. 3d
650, 650-51, 653 N.E.2d 695, 696 (1995)) (emphasis added). In rejecting the Ohio
Supreme Court's "bright-line prerequisite" and in reversing its judgment, the
Supreme Court focused on the issue of voluntary consent:

 The Fourth Amendment test for a valid consent to search is that the
consent must be voluntary, and '[v]oluntariness is a question of fact to
be determined from all the circumstances.'. . . The Supreme Court of
Ohio having held otherwise, its judgment is reversed, and the case is
remanded for further proceedings not inconsistent with this opinion.


Robinette, 519 U.S. at 39-40, 117 S. Ct. at 421 (citations omitted) (emphasis added).

 In Davis, police officers effected a traffic stop of Davis for suspicion of driving
while intoxicated. During the initial detention, the officers did not detect an order of
alcohol on Davis and determined he was not intoxicated. They further did not detect
an odor of alcohol or any type of drug coming from the car. The officers questioned
Davis and his passenger and ran a computer check. Although they determined that
Davis's driver's license was valid, the officers did not believe his statement that he
was "on a business trip." The officers asked Davis for permission to search his car,
and Davis refused to give consent. After performing a pat-down search of Davis, the
officers told him he was free to leave, but his car was "being detained for an on-scene
investigation." A canine unit was called to the scene and a dog made a positive alert
at the trunk of Davis's car. The officers recovered a suitcase containing marihuana. 
Davis, 947 S.W.2d at 241.

 The Texas Court of Criminal Appeals stated that the purpose of the
investigative detention was effectuated when the officers determined that Davis was
not intoxicated and, as determined by the officers when they told Davis he was free
to leave, no known fact, or rational inferences from those facts, supported a
conclusion that Davis was engaged in or soon would engage in criminal activity. Id.
at 245. It noted that "even though the officers stated appellant was free to leave, he
was effectively restrained." Id. at 246. In detaining Davis's car, "the officers were
effectively depriving appellant of his liberty interest of proceeding with his itinerary." 
Id. Thus, in Davis, the Court determined that the court of appeals erred in holding the
continued detention of the vehicle was reasonable, reversed the decision, and
remanded the case to the trial court. Id. 

 The Fourteenth Court of Appeals has interpreted both Robinette and Davis to
mean that "an officer may request consent to search a vehicle after a completed traffic
stop but may not detain the occupants or vehicle further if such consent is refused
unless reasonable suspicion of some criminal activity exists." Simpson v. State, 29
S.W.3d 324, 328 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd). We agree. We
refuse to utilize a bright-line test or to hold that it is unreasonable per se for an officer
to request a consent to search after the completion of a traffic stop. Rather, our focus
must be on the voluntariness of the consent.

 We have noted before that one of the well-established exceptions to the warrant
and probable cause requirements of the Fourth Amendment is a search conducted
pursuant to consent. Derrow, 981 S.W.2d at 778 (citing Schneckloth v. Bustamonte,
412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44 (1973)). Constitutional proscriptions
against warrantless searches and seizures do not come into play when a person gives
free and voluntary consent to a search. Derrow, 981 S.W.2d at 778. Voluntary
consent to a warrantless search violates neither the United States or Texas
Constitutions, nor the laws of Texas. Brimage v. State, 918 S.W.2d 466, 480 (Tex.
Crim. App. 1994) (citing United States v. Matlock, 415 U.S. 164, 94 S. Ct. 988
(1974)).

 In order to be valid, consent must "not be coerced, by explicit or implicit
means, by implied threat or covert force." Carmouche v. State, 10 S.W.3d 323, 331
(Tex. Crim. App. 2000) (quoting Schneckloth, 412 U.S. at 228, 93 S. Ct. at 2048). 
Although the United States Constitution only requires the State to prove the
voluntariness of consent by a preponderance of the evidence, the Texas Constitution
requires the State to show by clear and convincing evidence that the consent was
freely given. Carmouche, 10 S.W.3d at 331. If the record supports a finding by clear
and convincing evidence that consent to search was free and voluntary, we may not
disturb that finding. Id.

 Here, as shown by the videotape in the record, as Lily handed him the
completed traffic warning citation, appellant, without being questioned, volunteered
an explanation for one of his previous arrests. Lily then asked appellant whether he
had drugs or stolen weapons in his possession, and appellant stated he did not. Lily
then asked if he could search appellant's car, and appellant said "yes, you could." 
Approximately four and one-half minutes passed from the time the traffic stop began
to the time that Lily asked for consent to search the car.

 The videotape clearly shows that appellant's consent to search was freely and
voluntarily made. There was no evidence whatsoever that Trooper Lily threatened
or coerced appellant in any manner. The videotape shows the encounter between Lily
and appellant to be brief and cordial. Appellant, himself, without questioning from
Lily, volunteered information about one of his previous arrests. When Lily asked if
he could search appellant's car, appellant said clearly "yes, you could." Lily did not
say anything or do anything that conveyed a message that compliance with his request
was required. Lily made his request after he issued the warning citation to appellant.

 We hold the record does support an implied finding of clear and convincing
evidence that appellant's consent to search was free and voluntary. The trial court did
not abuse its discretion in denying appellant's motion to suppress evidence based on
any "prolonged detention." 

 We overrule appellant's first issue.

Arrest 

 Appellant contends, in his second issue, that Trooper Lily effected his arrest
without probable cause when Lily placed handcuffs on him after finding the bundle
of money in the pillow case. He argues that, because the possession of a large amount
of money is not a crime and Lily testified he "put [appellant] under arrest" after
finding the money, he was in fact arrested without probable cause. Thus, he argues
that any evidence seized after his "arrest" should have been suppressed. 

 In Rhodes v. State, the Texas Court of Criminal Appeals held that police
officers may use such force as is reasonably necessary to effect the goal of a stop:
investigation, maintenance of the status quo, or officer safety. 945 S.W.2d 115, 117
(Tex. Crim App. 1997). In Rhodes, a police officer, after a car chase, placed
handcuffs on the passenger of a car after the driver of the car fled on foot. The officer
was concerned for his safety, based on the circumstances: it was dark; the area was
a high crime location; the officers had just concluded a car chase which was initiated
due to the commission of a traffic violation and during which a bag was dropped from
the car; and, his partner was chasing the driver, leaving him alone with the suspect. The court rejected Rhodes's "bright-line test" that mere handcuffing is always
the equivalent of an arrest. Id. at 118. Rather, it noted that "common sense and
ordinary human intelligence must govern over rigid criteria" in evaluating the
reasonableness of an investigative detention. Id. It explained as follows:

 "Reasonableness" must be judged from the perspective of a reasonable
officer at the scene, rather than with the advantage of hindsight.
Furthermore, allowances must be made for the fact that officers must
often make quick decisions under tense, uncertain and rapidly changing
circumstances.


Id. The Court concluded that the officer made a "temporary investigative detention"
of Rhodes under Terry that was "reasonable and justified under the circumstances
surrounding the detention." Id. Likewise, Trooper Lily's placement of handcuffs on
appellant following the consensual search of appellant's car only amounted to a
temporary investigative detention.

 A police officer's testimony is one factor to consider, along with other facts
and circumstances, in determining whether an arrest has taken place. Rhodes, 945
S.W.2d at 117. Contrary to appellant's assertion that Lily arrested appellant at that
time, Lily testified that, although he did not intend to place appellant under arrest at
that time, Lily, for his own safety, placed handcuffs on appellant. When asked why
he handcuffed appellant when he did, Lily responded, "Well, when you have that
large amount of money there you don't know if the Defendant's going to run after
you, come after you or run away. That was for my safety." Lily stated he wanted to
make sure appellant did not "jump" on him.

 After obtaining appellant's consent to search the car, Trooper Lily conducted
a pat-down search of appellant for weapons and found a knife in appellant's pocket. 
Lily asked appellant to stand off the roadway, removed the keys from the ignition of
the car, and opened the trunk. After searching the trunk, Trooper Lily found a brick-shaped object in a pillowcase on the backseat of the car. Appellant began moving
away from the car, and Lily asked him to step closer to the car and remain in the
lighted area. The record reflects that, after finding the bundle of money, Trooper Lily
felt a heightened concern for his personal safety.

 As was the officer in Rhodes, Trooper Lily was alone with appellant in a dark
area of a high crime location. Additionally, appellant was very nervous and had a
previous arrest for gun charges. Lily had just discovered a bundle of money in
appellant's car and had to repeatedly ask appellant to stay close to the car in the
lighted area. Based on his training and experience, Lily suspected the bundle of
money wrapped in cellophane was "drug money."

 We hold that Trooper Lily's conduct in handcuffing appellant under these
circumstances did not amount to an "arrest" and was reasonable as a temporary
investigative detention. See Id. at 117-18. The facts, and rational inferences from
those facts, arising during Trooper Lily's consensual search support an implied
finding that appellant was engaged in or soon would engage in criminal activity.
Thus, the trial court did not abuse its discretion in denying appellant's motion to
suppress evidence based on appellant's theory that he was "arrested" without
probable cause. 

 We overrule appellant's second issue. 

Second Pat-Down Search

 In his third issue, appellant argues that Trooper Lily's subsequent pat-down
search of appellant's person was illegal. Appellant contends that because Trooper
Lily's conducted his first pat-down search and determined appellant was not carrying
any weapons, any search subsequent to that was no longer a valid search under Terry.
In support of his argument he relies on In the Matter of A.D.D., 974 S.W.2d 299 (Tex.
App.--San Antonio 1998, no pet.), and Autry v. State, 21 S.W.3d 590 (Tex.
App.--Houston [1st Dist.] 2000, no pet.). However, both cases are readily
distinguishable from the instant case.

 In A.D.D., police officers were dispatched to an address where teenagers were
smoking crack cocaine. Upon arrival, the officers saw three young men, one of whom
was A.D.D., sitting in front of a garage. As the officers walked up the driveway, they
saw one of the men lean back and put something inside the garage wall. The officers
told the young men to put their hands in plain view and frisked them for weapons.
They found none. The officers then found crack cocaine in the garage wall. They
arrested the young man who placed the cocaine in the wall. Then they patted down
A.D.D. a second time, and found a plastic bag containing crack cocaine. The court
concluded the second search of A.D.D. violated the United States and Texas
constitutions. In the Matter of A.D.D., 974 S.W.2d at 306-07. 

 However, unlike the case before us, the officers in A.D.D. "had full control
of the situation" and had "no articulable fear of A.D.D." Id. at 306. The court noted
that neither officer testified to any fact that could have justified a protective weapons
search of A.D.D. after the first pat-down. Id. Here, after Trooper Lily found the
bundle of money, Trooper Lily testified he felt a heightened concern for his personal
safety. Appellant began moving away from the car, and Lily had to ask him to step
closer to the car and remain in the lighted area. 

 In Autry, a patrolling police officer believed he saw Autry, who was sitting in
the driver's seat of a car, engage in a drug transaction. The officer asked Autry for his
identification, and, as Autry retrieved it from his car, the officer saw him reach under
the armrest. The officer then patted down Autry for weapons, and found neither
weapons nor narcotics. The officer asked Autry for consent to search his person and
his car, but Autry only consented to the search of his person. The officer searched
Autry, but found no contraband. The officer told appellant he was free to go, but
detained appellant's car until a narcotics detection dog could be brought to the scene. 
About 10 minutes later, the dog smelled drugs in the car, and marihuana and cocaine
were recovered from the car. Autry, 21 S.W.3d at 591. 

 A panel of this Court concluded that, "once the pat down and search of
appellant's person produced neither drugs nor weapons, the limit of the investigatory
detention was reached, and further detention of appellant or his car was
impermissible." Autry, 21 S.W.3d at 592 (emphasis added). We held the search of
Autry's car was illegal. Id. Here, the subsequent pat-down search of appellant was
conducted after a consensual search of appellant's car revealed a bundle of money
and the discovery of the money, along with appellant's behavior, led Trooper Lily to
have a heightened concern for his personal safety. We hold, under these circumstances, that Trooper Lily's subsequent pat-down
search was not unreasonable under either the United States or the Texas constitutions. 
Thus, the trial court did not abuse its discretion in denying appellant's motion to
suppress evidence based on appellant's theory that the second pat-down search was
illegal. 

 We overrule appellant's third issue. 

Conclusion

 We affirm the judgment of the trial court.



 Terry Jennings

 Justice


Panel consists of Justices Mirabal, Hedges and Jennings.

Publish. Tex. R. App. P. 47.
1. U.S. Const. amend IV. 
2. Texas courts follow the federal Terry standard with respect to temporary
investigative detentions, and our Court of Criminal Appeals has found no reason to employ a more stringent standard under the Texas Constitution with
respect to such detentions. Davis v. State, 829 S.W.2d 218, 219 (Tex. Crim.
App. 1992).