**Floyd Taylor AUTRY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–98–00667–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 25, 2000.

Jerry L. Gribble, II, Bryan, for Appellant.

Bill R. Turner, Bryan, for State.

Panel consists of Justices COHEN, HEDGES, and ANDELL.

## OPINION

ERIC ANDELL, Justice.

After his motion to suppress was denied, appellant pleaded guilty to possession of less than one gram of cocaine, pursuant to a plea agreement. The trial court sentenced appellant to deferred adjudication probation for five years and assessed a $1,000 fine. In his sole issue, appellant contends his motion to suppress should have been granted because the State did not meet its burden of proof to show his detention was based on a reasonable suspicion of criminal activity. We reverse.

### Facts

Three Bryan Police Department officers were patrolling an area known for drug trafficking when Officer Thane saw an illegally parked car. When the officers passed appellant, who was sitting in the driver's seat of the car, they saw two other people about 30 feet from the car making a waist-level exchange. Officer Thane has over 10 years of experience as a narcotics investigator, and believed the exchange he witnessed could have been a drug transaction. The officers drove around the block and doubled back to the scene.

When the officers arrived a few minutes later, appellant was out of his car, standing in front of a nearby mobile home. One of the two persons who had been involved in the waist-level exchange was still present, and was also standing near the mobile home. As Officer Thane got out of his car, appellant walked toward him. When appellant acknowledged the illegally parked car belonged to him, Officer Thane asked to see some identification. Appellant said he had none; he told the officer his name was Dennis Autry and he was born June 11, 1971. Officer Thane asked appellant to get some identification from his car.

While appellant was in his car, Officer Thane saw him reach for something under the armrest. At that point, Officer Thane asked appellant to get out of the car, and patted him down for weapons. This patdown did not produce a weapon or drugs. Officer Thane asked for appellant's consent to search his person and his car; appellant consented only to the search of his person. Officer Thane searched appellant, but this search produced no contraband. Officer Thane told appellant he was free to leave, but detained appellant's car until a narcotics detection dog could be brought to the scene. About 10 minutes later, the dog indicated it smelled drugs in the car. A search of the car produced marihuana and traces of cocaine.

### Motion to Suppress

Appellant contends the State made no connection between appellant or his car and the two persons suspected of conducting a drug transaction, did not introduce evidence showing there had even been a drug transaction, and did not show he tried to avoid contact with the police. He concludes, therefore, that Officer Thane did not have probable cause to conduct the search of the vehicle and the cocaine discovered was the result of an illegal search

and seizure in violation of the Fourth Amendment of the United States Constitution and the Texas Constitution article I, section nine. We agree.

■■■ We review *de novo* a trial court's determination of reasonable suspicion and probable cause, and examine the evidence presented at the suppression hearing in the light most favorable to the trial court's ruling. *Guzman v. State,* 955 S.W.2d 85, 87–88 (Tex.Crim.App.1997). A warrantless search of an automobile is not unreasonable under the Fourth Amendment when there is probable cause to believe the vehicle contains contraband or evidence of a crime. *Carroll v. United States,* 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543 (1925); *Powell v. State,* 898 S.W.2d 821, 827 (Tex.Crim.App.1994).

■■■ Probable cause exists when the facts and circumstances, within the knowledge of the officer, would lead a person of reasonable caution and prudence to believe that an instrumentality of a crime or evidence will be found. *Moulden v. State,* 576 S.W.2d 817, 819 (Tex.Crim.App.1978). To justify an investigative detention, an officer must have specific articulable facts which, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion. *Davis v. State,* 947 S.W.2d 240, 242 (Tex.Crim.App.1997). The articulable facts used by the officer must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to crime. *Meeks v. State,* 653 S.W.2d 6, 12 (Tex.Crim.App. 1983).

■■■ We consider the totality of the circumstances when we evaluate the validity of an investigatory detention. *Davis,* 947 S.W.2d at 241. The evidence favorable to the trial court's ruling shows that an experienced narcotics officer patrolling an area known for its high incidence of drug trafficking: (1) saw appellant's car illegally parked in the street, with appellant seated inside the car; (2) saw what he perceived to be a drug transaction between two persons who were standing 30 feet away; (3) shortly thereafter, saw both appellant and one of the parties to this suspected drug transaction standing outside a mobile home; and (4) saw appellant attempt to grab something under the armrest in his car. There was nothing other than proximity to connect appellant to either of the parties to the suspected drug transaction. It was at Officer Thane's request that appellant had gotten back into his car to look for identification, when the officer saw appellant attempt to grab something under the arm rest. Finally, although appellant supplied a false name and birthdate in response to Officer Thane's questioning, this information was not known by the officers before the car was searched. Thus, it cannot support the search.

We conclude that once the patdown and search of appellant's person produced neither drugs nor weapons, the limit of the investigatory detention was reached, and further detention of appellant or his car was impermissible. *See Davis,* 947 S.W.2d at 241 (after brief stop and patdown disclosed no contraband and driver was determined not to be intoxicated, detention of car until arrival of narcotics dog not justified). Given the totality of these circumstances, we hold the search of appellant's car illegal. Therefore, we hold the trial court erred in denying the motion to suppress.

We sustain appellant's sole issue on appeal.

We reverse the judgment and remand the cause.

Justice TAFT requested en banc consideration of this case. A majority of the court voted against en banc review.

Justice TAFT dissenting.

TIM TAFT, Justice, dissenting from denial of en banc review.

The Panel Opinion implies that the police lawfully detained appellant, Floyd Taylor Autry, to determine his identity, conduct a pat-down without consent, and perform a consensual search of appellant's person. The Panel Opinion expressly holds that the continued detention of appellant's car for 10 minutes while a dog was brought to the scene to conduct a dog sniff was beyond the scope of a lawful temporary investigative detention. The reasons for my disagreement with the Panel Opinion result from a careful comparison of the facts in this case with those in *Davis v. State*, 947 S.W.2d 240 (Tex. Crim.App.1997), upon which the Panel Opinion primarily relies. I would hold that the actions of the police officers throughout their investigation of appellant were reasonable and within the scope of a lawful temporary investigative detention.

The critical facts of this case are:

1. The scene of the crime is an area known for drug trafficking;

2. Appellant was first observed behind the wheel of an unlawfully parked car 30 feet from two persons making what appeared, to an experienced narcotics investigator, to be a drug transaction;

3. After circling the block, the officers observed appellant outside his car standing near one of the two persons who had been involved in the apparent drug transaction;

4. Appellant acknowledged that the illegally parked car belonged to him;

5. When asked for identification, appellant had none on him, causing the officers to ask appellant to get some identification from his car;

6. When appellant attempted to grab something under the armrest, the officer asked appellant to get out of the car while the officer patted down appellant for weapons;

7. When the pat-down revealed no weapon or drugs, the officer asked to search appellant's person, and appellant consented;

8. Finding no contraband on appellant's person, the officer asked for consent to search appellant's car which appellant refused;

9. Appellant asked several times to reenter his car, but the officers did not allow it for safety reasons because the car had not been checked for weapons;

10. Appellant was told he was free to go, while the officers detained his car for a narcotics detection dog to be brought to the scene;

11. About five to 10 minutes later, the dog smelled drugs in the car; and

12. A search of the car produced marihuana and traces of cocaine.

The critical facts of *Davis* were:

1. Davis drove through Lufkin at 1:00 a.m. weaving three times from line to line within his lane;

2. Officers stopped Davis's car, suspecting Davis may have been driving while intoxicated;

3. Davis got out and met the officers at their patrol car, causing the officers to suspect Davis did not want the officers near his car;

4. Davis appeared to be nervous;

5. Davis said he was not intoxicated, but merely tired;

6. Neither Davis nor his female passenger smelled of alcohol or drugs, nor did the car;

7. The officers concluded Davis was not intoxicated;

8. At that point, the initial purpose of the traffic stop was completed;

9. An officer then asked Davis questions about his destination, residence, and purpose of the trip, receiving answers he felt were inconsistent with those given by the

passenger answering the same questions;

10. Davis did not appear to be dressed properly for the businessman he claimed to be;

11. Background checks showed that Davis had no prior convictions and his driver's license was valid;

12. The passenger had a prior conviction for a drug offense;

13. The registration was not in Davis's name, but the car had not been reported stolen and the insurance papers were in order;

14. Davis said the car belonged to his girlfriend who was not along on the trip, while the female passenger said it belonged to appellant;

15. The officers asked for consent to search Davis's car, and he refused;

16. The officers did a pat-down search of Davis and found no weapons or drugs;

17. The officers informed Davis he was free to go, but the car was being detained for an on-scene investigation;

18. A canine unit was called, and 21 minutes later the dog alerted on the car trunk; and

19. Marihuana was found in the trunk.

*Davis*, 923 S.W.2d 781, 784–85, 789 (Tex. App.-Beaumont 1996), *rev'd*, 947 S.W.2d 240 (Tex.Crim.App.1997). Under these circumstances, the Court of Criminal Appeals held that, after the purpose of the investigative detention had been effectuated, the officers had no reason to further detain Davis or his car. *Davis*, 947 S.W.2d at 245–46.

In contrast to *Davis*, the officers in this case observed appellant committing a parking violation, which afforded the officers adequate reason to detain appellant to maintain the status quo while they determined appellant's identity. During this effort, appellant made a furtive move by reaching under the armrest of his car. This gave the officers reason to believe appellant could have been reaching for a weapon, and the Panel Opinion finds no fault with the officers' immediate pat-down of appellant at that time. There is also no contest of the lawfulness of the officer's search of appellant's person pursuant to his consent. The question is whether, at that point, the officers had sufficient reasons to detain appellant's car for 10 additional minutes to conduct a dog sniff, which is not a search. *See United States v. Place*, 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983).

I believe the officers had a sufficient basis for continuing the detention for 10 minutes to conduct a dog sniff for three reasons: (1) the same danger existed, that appellant may have secreted a weapon under the armrest, as existed when the officers patted down appellant for a weapon and searched appellant's person pursuant to consent; (2) having eliminated appellant's person as the place where a weapon was secreted, greater reason existed that a weapon was in appellant's car than before had existed that a weapon was on appellant's person (because, before appellant's person was eliminated as a possibility, a weapon may have been either on appellant's person or in his car); (3) because appellant had denied permission to search his car, the officers reasonably could have had heightened suspicion the car contained a weapon or drugs; and (4) the additional intrusion was slight both temporally and spatially. In other words, because a dog sniff is not even a search and does not invade the interior of a car, virtually no intrusion was made upon appellant's reasonable expectation of privacy spatially, and the 10–minute delay is a very slight temporal intrusion in comparison to the suspected danger that appellant may have had a weapon in his car.

While it might be argued that a drug detection dog would not have sniffed a weapon, a negative report from the dog would have raised further suspicion, if not confirmed, that it was a weapon for which appellant was reaching under the armrest.

Of course, once the dog sniffed drugs, probable cause existed to search the car pursuant to the *Carroll* doctrine, which allows a warrantless search of a motor vehicle based on probable cause. *See State v. Guzman,* 959 S.W.2d 631, 634 (Tex.Crim.App.1998).

This case, thus, has two crucial distinctions from *Davis:* (1) Davis had committed no offense, while appellant had committed a parking violation; and (2) the reason for the stop of Davis had ceased providing any justification for further detention when the officers developed suspicions based on further conversation with Davis, while the suspicion for further detention of appellant arose during the obtaining of appellant's identification, which was within the lawful scope of appellant's detention for the parking violation. Furthermore, it is difficult to criticize the officers' actions in this case, or suggest a more reasonable, less intrusive method of handling the investigation of appellant. Under the circumstances facing the officers in this case, I do not believe they had to shrug their shoulders and allow appellant to reenter his car where appellant may have secreted a weapon under the armrest.

Accordingly, I respectfully dissent to the Panel Opinion's disposition of this case on appeal.

Justice NUCHIA joins this dissent.