**Ismael Eric CANALES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–05–00772–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 27, 2006.

Steven Abramowitz, Houston, for Appellant.

Lori Deangelo Fix, Assistant District Atty., Houston, for Appellee.

Panel consists of Chief Justice RADACK and Justices JENNINGS and ALCALA.

## OPINION

TERRY JENNINGS, Justice.

After the trial court denied his motion to suppress evidence, appellant, Ismael Eric Canales, pleaded guilty, with an agreed punishment recommendation from the State, to the offense of possession of marihuana of less than two ounces.[1] In accordance with the plea agreement, the trial court sentenced appellant to confinement for 30 days in the Harris County Jail. In his sole issue, appellant contends that the trial court erred in denying his motion to suppress. We reverse and remand.

### Factual and Procedural Background

Houston Police Officer Chris Cayton testified that on April 28, 2005 at approximately 1:00 a.m., while checking "hot spots" known for criminal activity, he saw appellant sitting in the driver's seat of a car parked in the parking lot of a Mobil convenience store. Cayton routinely checked the parking lot as a "hot spot" because it is a location where there have been "a lot of arrests" and "a lot of citizen complaints" related to trespassing, prostitution, and narcotics. The parking lot was empty that morning, except for appellant's car, which was "on the east side of the location near the rear of the store." Cayton, who was in his patrol car with his partner Robert Teweleit, watched appellant's car "for three to four minutes" to see whether the car left the lot or if anyone entered or exited the car. After watching the car and seeing no activity, Cayton drove through the store's parking lot, exited the lot, made a u-turn, came back into the parking lot, and pulled in behind appellant's car. Appellant's car attracted Cayton's attention because it was parked toward the "side and rear" of the station, the

---

1. *See* Tex. Health & Safety Code Ann. § 481.121 (Vernon 2003).

lights were out, the windows were down, the engine was not running, and there were two males in the car. Cayton noticed that the passenger "was looking around watching everything" and was "extremely nervous" and that as Cayton initially drove through the parking lot, the passenger watched him the whole time.

Cayton decided to approach the car and talk to appellant and the passenger "to make sure they weren't broke down" and to "see what they were waiting for." Cayton approached the driver's side of appellant's car as Teweleit approached the passenger's side. As he approached the car, Cayton noticed that "right outside the driver's window, which was down, there was a pile of—pieces of cigar," indicating that a cigar had been torn apart. Based on Cayton's training and experience, he knew that "people will buy cigars, empty them out, and then fill them with marihuana." There were also pieces of cigar on the car window, and, when Cayton looked in the car, he noticed pieces of the cigar inside the car and on the leg and lap of appellant.

Cayton asked appellant general questions concerning "what was going on" and also "ran the [license] plate" on appellant's car. Cayton noted that the plate indicated that the car was from LaPorte, "which [was] nowhere near" the area and stated that he "wanted to make sure [appellant] wasn't having car trouble and just find out what was going on, if he needed anything." Appellant seemed "a little nervous" and the passenger seemed "extremely nervous." Appellant did not provide Cayton with "definitive answers," and appellant told Cayton that he was "hanging out in the area with his home boy."

At some point during Cayton's exchange with appellant, Teweleit, who was on the other side of the car, told appellant to show his hands and exit the car. Cayton took appellant to the back of the car, conducted a quick pat down "to search for weapons," and found nothing on appellant. After patting down appellant, and as Cayton was standing at the rear of the car and "talking to [appellant]," Teweleit walked around in front of appellant's car, leaned inside, and came back out with a small bag containing a green, leafy substance that Cayton knew, based on his training and experience, to be marihuana. Teweleit also recovered a cigar that had been shelled out and had marihuana inside of it.

Teweleit did not testify at the hearing, and Cayton testified that he did not know why Teweleit had asked appellant to exit his car. However, Teweleit told Cayton that when Teweleit had approached appellant's car, he saw appellant "put his right hand between the seat and the console and that's when he had [appellant] exit the vehicle." When appellant exited the car and Cayton took appellant to the rear of the car, Teweleit "immediately stepped around, reached down into the area where he saw [appellant] put his hand, pulled out a small baggy" of marihuana, and walked to the rear of the car with it. The passenger subsequently exited the car and after the officers "ran [a computer check on] him," they released him.

On cross-examination, Cayton testified that appellant was parked "in an area where people would park ordinarily" to go into the convenience store and that the store was open at the time. Cayton stated that he stops people in the store's parking lot "quite a bit" and that he would drive by the station every day that he was on duty. He also stated that neither he nor Teweleit asked appellant for his consent to search the car.

### Standard of Review

■ The appropriate standard for reviewing a trial court's ruling on a motion to

suppress evidence is bifurcated, giving almost total deference to a trial court's determination of historical facts and reviewing de novo the court's application of the law. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex.Crim.App.2002). In reviewing a ruling on a question of the application of law to facts, we review the evidence in the light most favorable to the trial court's ruling. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). However, we review de novo a trial court's determination of reasonable suspicion and probable cause. *Id.* at 87; *Spight v. State*, 76 S.W.3d 761, 765 (Tex.App.-Houston [1st Dist.] 2002, no pet.). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility. *Maxwell*, 73 S.W.3d at 281. Accordingly, the trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000).

■ Here, the trial court denied appellant's motion to suppress without stating the basis for its order. The parties did not request, and the trial court did not make, findings of fact and conclusions of law. When a trial court does not file findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Id.*

### Reasonable Suspicion and Probable Cause

In his sole issue, appellant argues, under the United States and Texas Constitu-

tions,[2] that a *Terry*[3] detention was not justified and that the officers did not have the authority to conduct a warrantless search of his car because the officers did not have probable cause to believe that the car contained evidence of a crime. The State contends that the trial court properly denied the motion to suppress because the officers had reasonable suspicion to justify an investigative detention and probable cause to search appellant's car after Teweleit saw appellant put his hand between the seat and the center console of the car. The parties agreed during the hearing on the motion to suppress that this case presented the issue of a warrantless detention and search.

■ Circumstances short of probable cause may justify a temporary investigative detention. *Terry v. Ohio*, 392 U.S. 1, 15, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889(1968); *Stone v. State*, 703 S.W.2d 652, 654 (Tex.Crim.App.1986).[4] A peace officer may make a temporary investigative detention of an individual if the officer has a reasonable suspicion "that there is something out of the ordinary occurring and some indication that the unusual activity is related to crime." *Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App.1997) (citations omitted). The test for reasonable suspicion is a factual one and is made and reviewed by considering the totality of the circumstances at the time of the stop. *Loesch v. State*, 958 S.W.2d 830, 832 (Tex.Crim.App.1997). The reasonableness of a temporary detention "will be justified when the detaining officer has specific ar-

---

2. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9.

3. *Terry v. Ohio*, 392 U.S. 1, 15, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889(1968).

4. Texas courts follow the federal *Terry* standard with respect to temporary investigative detentions, and our Court of Criminal Appeals has found no reason to employ a more stringent standard under the Texas Constitution with respect to such detentions. *Davis v. State*, 829 S.W.2d 218, 219 (Tex.Crim.App. 1992).

ticulable facts, which, taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity." *Woods v. State,* 956 S.W.2d 33, 38 (Tex.Crim.App. 1997). These facts must amount to more than a mere hunch, a guess, or a vague suspicion. *Guevara v. State,* 6 S.W.3d 759, 763 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd). A detention not based on reasonable suspicion is unreasonable and violates the Fourth Amendment. *Davis,* 947 S.W.2d at 243. Investigative detentions become unreasonable when they are not reasonably related in scope to the circumstances that justified the interference in the first place. *Id.* at 244. Thus, an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop and, once the reason for the detention has been satisfied, the detention may not be used as a "fishing expedition for unrelated criminal activity." *Id.* at 243.

 A warrantless search of an automobile is not unreasonable under the Fourth Amendment when there is probable cause to believe that the vehicle contains contraband or evidence of a crime. *Carroll v. United States,* 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543 (1925); *Powell v. State,* 898 S.W.2d 821, 827 (Tex. Crim.App.1994); *Autry v. State,* 21 S.W.3d 590, 592 (Tex.App.-Houston [1st Dist.] 2000, no pet.).[5] "Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the

instrumentality of a crime or evidence of a crime will be found." *Estrada v. State,* 154 S.W.3d 604, 609 (Tex.Crim.App.2005); *see also Moulden v. State,* 576 S.W.2d 817, 819 (Tex.Crim.App.1978); *Dickey v. State,* 96 S.W.3d 610, 613 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *Autry,* 21 S.W.3d at 592. Probable cause has also been described as "the sum total of layers of information, and not merely individual layers and considerations, that a reasonable and prudent man acts upon." *Estrada,* 154 S.W.3d at 609.

 In support of his contention that the search of his car was unreasonable, appellant relies on *Wiede v. State,* 157 S.W.3d 87 (Tex.App.-Austin 2005, pet. ref'd). In *Wiede,* a witness who stopped to help a driver injured in a car accident saw the driver push an item with his uninjured arm between the console of the front seat. *Id.* at 92. When the driver was removed from the car and taken to an ambulance, the witness told a police officer that he might want to check the seat because the driver "was messing around with something there." *Id.* The officer reached into the car and pulled out a bag of narcotics. *Id.* at 92–93. The State sought to justify the search based on the driver's traffic violation of failure to control speed. *Id.* at 95. The Austin Court of Appeals rejected this argument, holding that the State failed to "produce evidence or articulate any reason to believe that a search of the car—particularly, the space between the driver's seat and the center console— would produce additional evidence relevant to the offense of failing to control speed."

---

5. The automobile exception to the Fourth Amendment, which permits a warrantless search of an automobile upon a showing of probable cause, is justified under the United States and Texas Constitutions because a vehicle can be quickly moved out of the location or jurisdiction in which the warrant must be sought, making obtaining a warrant impractical. *Dickey v. State,* 96 S.W.3d 610, 613 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (citing *Carroll v. United States,* 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543 (1925)); *Moulden v. State,* 576 S.W.2d 817, 819 (Tex. Crim.App.1978).

*Id.* at 97. The court stated that "[t]he officer must have probable cause to believe that the car contains evidence of the crime under investigation, not evidence of some unrelated crime." *Id.*

Alternatively, the State argued in *Wiede* that there was probable cause to search car for a controlled substance based on the witnesses's observation of the driver "reach[ing] across his body with his uninjured arm while police were not watching and hide something smaller than his fist between the driver's seat and the center console." *Id.* The court noted that the Texas Court of Criminal Appeals "has repeatedly held that a 'furtive gesture' ... made while a person is stopped for a traffic offense does not establish probable cause for a search." *Id.* at 98 (citing *Howard v. State*, 599 S.W.2d 597, 604–05 (Tex. Crim.App.1979) (defendant dipped down in seat toward steering wheel when stopped for failing to use turn signal); *Beck v. State*, 547 S.W.2d 266, 268–69 (Tex.Crim. App.1976) (defendant reached toward glove compartment when stopped for failing to use turn signal); *Wilson v. State*, 511 S.W.2d 531, 535 (Tex.Crim.App.1974) (defendant moved hand between seats when stopped for running red light). The court concluded that the furtive gesture made by the driver was "not supportive of probable cause to search a vehicle 'because of the ambiguous and potentially innocent nature of such movements.' " *Id.* (citing *Howard*, 599 S.W.2d at 604); *see also State v. Phillips*, 752 S.W.2d 194, 196 (Tex. App.-Amarillo 1988, no pet.) ("Texas cases generally agree that an ambiguous furtive gesture is insufficient to establish probable cause.").

Here, Officer Cayton testified that he saw appellant sitting in a car in a convenience store parking lot, which was a "hot spot" known for criminal activity, at approximately 1:00 a.m. Cayton watched ap-

pellant's car "for three to four minutes" and decided to approach appellant to make sure that his car was not "broken down." He noted that the passenger in appellant's car "was looking around watching everything" and was "extremely nervous." As he approached appellant's car, he saw a pile of pieces of cigar "right outside the driver's window" and he knew from his training and experience that "people will buy cigars, empty them out, and then fill them with marihuana." He also saw pieces of cigar on the car's window and inside the car on the leg and lap of appellant. When questioned, appellant seemed "a little nervous" and did not provide Cayton with "definitive answers." Teweleit told Cayton that as Teweleit approached appellant's car, he saw appellant "put his right hand between the seat and the console and that's when [Teweleit] told appellant to exit the car."

Although *Wiede* is factually distinguishable, the general principle that furtive gestures alone do not establish probable cause for a search remains. In *Autry*, 21 S.W.3d at 591, a police officer noticed an illegally parked car while he was patrolling an area known for narcotics trafficking. The officer saw the defendant sitting in the driver's seat. *Id.* The officer also noticed two other people, about 30 feet from the car, performing what the officer believed, based on his experience, to be a narcotics transaction. *Id.* When the officer returned to the scene a few minutes later, he saw the defendant and one of the men who had been involved in the apparent narcotics transaction standing outside of the car near a mobile home. *Id.* The officer asked the defendant to retrieve his identification from his car. *Id.* While in his car, the defendant reached for something under the armrest. *Id.* The officer then instructed the defendant to get out of the car, patted him down, and found nothing. *Id.* The officer told the defendant that he was

free to leave, but detained the defendant's car until a narcotics dog could be brought to the scene. *Id.* About ten minutes later, the dog indicated that it smelled narcotics in the car, and the officers located narcotics in the car during a subsequent search. *Id.* The defendant did not consent to the officer's request to search the car. *Id.* This Court held that "once the patdown and search of appellant's person produced neither drugs nor weapons, the limit of the investigatory detention was reached," further detention of appellant or his car was impermissible, and the search of the car was illegal. *Id.* at 592.

Cayton's testimony supports an implied finding by the trial court that Cayton's investigatory detention of appellant was justified. However, there is no evidence in the record establishing that Teweleit had probable cause to believe that appellant's car contained contraband or evidence of a crime. Teweleit did not testify at the motion to suppress hearing and there is no evidence that he saw "the pile of [ ] pieces of cigar" that Cayton saw on the driver's side of the car. There is also no evidence that Teweleit, like Cayton, would have suspected the presence of narcotics based on the presence of cigar pieces and the totality of the circumstances. Moreover, we note that Cayton, who was clearly aware of the cigar pieces, did not order appellant out of the car and, at the time, Cayton had no idea why Teweleit had ordered appellant out of the car. Instead, the record indicates that Teweleit ordered appellant out of the car and, after Cayton had removed appellant from the car and conducted a "quick pat down," searched the car based solely on his observation that appellant put his right hand between the car's seat and console. Accordingly, we hold that the evidence presented at the motion to suppress hearing did not establish that Officer Teweleit had probable cause to be-

lieve that appellant's car contained contraband or evidence of a crime.

In reaching this holding, we are mindful that the Texas Court of Criminal Appeals has stated:

[W]hen there has been some cooperation between law enforcement agencies or between members of the same agency, the sum of the information known to the cooperating agencies or officers at the time of an arrest or search by any of the officers involved is to be considered in determining whether there was sufficient probable cause therefor.

*Woodward v. State,* 668 S.W.2d 337, 344 (Tex.Crim.App.1982).

The court in *Woodward* further stated:

[C]ourts have had occasion to recognize that effective police work in today's highly mobile society requires cooperative utilization of police resources. They have, accordingly, asserted that knowledge in one sector of a police system can be availed of for action in another, *assuming some degree of communication between the two.*

*Id.* (quoting *Moreno–Vallejo v. United States,* 414 F.2d 901, 904 (5th Cir.1969)) (emphasis added).

Here, the controlling authority is quite clear:

When one officer relies solely on *another officer's request* to arrest a suspect, probable cause must be based on the *requesting officer's* knowledge ... [and][i]f the *requesting* officer has sufficient information to establish probable cause, then the arresting officer's arrest will be justified.

*Farmah v. State,* 883 S.W.2d 674, 678 (Tex.Crim.App.1994) (emphasis added); *see also Fearance v. State,* 771 S.W.2d 486, 509 (Tex.Crim.App.1988) (stating that, in determining whether arresting officer had sufficient knowledge to reasonably believe

suspect had committed murder, court was not limited to considering arresting officer's personal knowledge because the arresting officer "could act upon the basis of information *relayed to him* by other officers") (emphasis added); *Tarpley v. State,* 565 S.W.2d 525, 529–30 (Tex.Crim.App. 1978) ("It is well established that an officer who does not himself possess probable cause for making a warrantless arrest may act upon the basis of information *relayed to him* by another officer requesting that an arrest be made.") (emphasis added); *Willhite v. State,* 937 S.W.2d 604, 607 (Tex. App.-Houston [1st Dist.] 1996, pet. ref'd) (stating that "a police officer who does not possess probable cause himself to make a warrantless arrest, may rely on information *that is transmitted to him by other officers* " and holding that "reasonable suspicion *may be transferred* from one officer to another") (emphasis added). In the record before us, there is no evidence that Cayton communicated his suspicions to Teweleit, that Tewleit saw the cigar pieces inside or outside of appellant's car, that Teweleit conducted the search at the direction or instruction of Cayton, or that Teweleit and Cayton "cooperated" in the search of the car. In fact, Cayton's testimony established that Teweleit made a unilateral decision to search appellant's car based only on his own observation of a furtive gesture.

 Moreover, although the State does not, in its briefing to this Court, expressly argue [6] that the search of appellant's car could be justified as a weapons search during the course of an investigatory detention, it did make this argument at the motion to suppress hearing. During the course of a lawful investigatory deten-

tion, an officer may conduct a limited search for weapons where it is reasonably warranted for his own safety or the safety of others. *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883; *Ramirez v. State,* 672 S.W.2d 480, 482 (Tex.Crim.App.1984); *Guevara,* 6 S.W.3d at 764.

The United States Supreme Court has stated:

> [T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Terry,* 392 U.S. at 27, 88 S.Ct. at 1883. Citing *Terry,* the Court of Criminal Appeals has recently emphasized that "there is no requirement that a police officer feel personally threatened or be 'absolutely certain' that the suspect is armed in order to conduct a pat-down search." *Glazner v. State,* 175 S.W.3d 262, 265 (Tex.Crim.App. 2005).

---

**6.** The State does assert in its appellate briefing that "[s]uspecting appellant and his passenger were concealing weapons or drugs, the officers, drawing on their knowledge of the area, law enforcement training, and experi-

ence, determined that a search was warranted." However, the State does not cite to any record evidence to support this assertion, and our independent review of the record reveals none.

Under certain circumstances, the right to conduct a protective search extends to the passenger compartment of a detainee's vehicle. *Goodwin v. State*, 799 S.W.2d 719, 728 (Tex.Crim.App.1990); *Horton v. State*, 16 S.W.3d 848, 852 (Tex. App.-Austin 2000, no pet.). The United States Supreme Court has explained:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983) (citing *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880). Thus, "the officer may conduct a protective search of a detainee's vehicle when he has a reasonable belief, based on specific and articulable facts, that the detainee my pose a danger to the officer or to others." *Alexander v. State*, 879 S.W.2d 338, 343 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd) (citing *Goodwin*, 799 S.W.2d at 728).

Here, Cayton did not testify that he believed appellant or the passenger to be dangerous or that he believed that appellant or the passenger might gain immediate control of a weapon hidden in the car. In fact, as noted above, Teweleit, the only officer to have observed appellant's alleged movement in the car, did not even testify at the suppression hearing. More importantly, the evidence in the record concerning appellant's movement and the possible reasons for conducting the search of appellant's car is extremely limited. Also, our inquiry is limited to the issue of "whether a reasonably prudent man in the circumstances presented would have been warranted in the belief that his or her safety was in danger." *See Glazner*, 175 S.W.3d at 265 (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883). The record presented lacks the detail necessary to support a finding that the officers reasonably believed, based on specific and articulable facts, that appellant was dangerous or might gain immediate control of a weapon.

The record in this case, in comparison to other cases wherein protective weapon searches of passenger compartments of cars have been upheld, is simply not sufficient to support the search of appellant's car. For example, in *Alexander*, 879 S.W.2d at 340, police officers observed a parked car inside a park in violation of curfew laws. When an officer approached the car, he saw the defendant "scrambling as if he were trying to hide something under the seat." *Id.* The officers removed the defendant from the car and specifically checked the car for weapons in the area where the defendant had been scrambling. *Id.* An officer testified that based on his experience, after seeing the defendant's movements he was "immediately concerned that there might be a weapon." *Id.* at 343. The court held that the officer "was justified in conducting the weapons search to neutralize the possible danger" and that the search was valid.

Similarly, in *Ramsey v. State*, 806 S.W.2d 954, 958 (Tex.App.-Austin 1991, pet. ref'd), when an officer stopped the defendant for a traffic violation, the officer saw the defendant throw a shaving kit onto the floor board. The defendant appeared disoriented and under the influence of drugs or narcotics. *Id.* at 955. The officer testified that he removed the shaving kit "for [his] safety" because he "assumed it might contain a weapon due to the size of it" and because the driver had attempted to hide it from him. *Id.* The court held

that the officer "was in possession of specific and articulable facts to warrant a reasonable belief that the defendant posed a danger" and that "the officer acted reasonably in taking preventative measures to ensure that there were no weapons within appellant's grasp before allowing appellant to return to his car." *Id.* at 958.

Here, unlike the above cases, the record is simply insufficient to support a finding that a reasonably prudent man in the circumstances would have been warranted in the belief that his safety was in danger. Again, Officer Cayton's testimony establishes that Officer Teweleit made a unilateral decision to search appellant's car based only on his observation of a furtive gesture. The record contains no evidence that Teweleit had a reasonable belief that he was in danger and was taking preventative measures to ensure that there were no weapons in the car. Accordingly, we hold that officer Teweleit's search, conducted on this basis, was not justified under the Fourth Amendment.

We sustain appellant's sole issue.

## Conclusion

We reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.