Opinion issued July 27, 2006 


















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-05-00772-CR
__________
 
ISMAEL ERIC CANALES, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from County Criminal Court at Law Number 8
Harris County, Texas
Trial Court Cause No. 1296010
 

 
 
O P I N I O N
          After the trial court denied his motion to suppress evidence, appellant, Ismael
Eric Canales, pleaded guilty, with an agreed punishment recommendation from the
State, to the offense of possession of marihuana of less than two ounces.


 In
accordance with the plea agreement, the trial court sentenced appellant to
confinement for 30 days in the Harris County Jail. In his sole issue, appellant
contends that the trial court erred in denying his motion to suppress. We reverse and
remand.        
Factual and Procedural Background
          Houston Police Officer Chris Cayton testified that on April 28, 2005 at
approximately 1:00 a.m., while checking “hot spots” known for criminal activity, he
saw appellant sitting in the driver’s seat of a car parked in the parking lot of a Mobil
convenience store. Cayton routinely checked the parking lot as a “hot spot” because
it is a location where there have been “a lot of arrests” and “a lot of citizen
complaints” related to trespassing, prostitution, and narcotics. The parking lot was
empty that morning, except for appellant’s car, which was “on the east side of the
location near the rear of the store.” Cayton, who was in his patrol car with his partner
Robert Teweleit, watched appellant’s car “for three to four minutes” to see whether
the car left the lot or if anyone entered or exited the car. After watching the car and
seeing no activity, Cayton drove through the store’s parking lot, exited the lot, made
a u-turn, came back into the parking lot, and pulled in behind appellant’s car. 
Appellant’s car attracted Cayton’s attention because it was parked toward the “side
and rear” of the station, the lights were out, the windows were down, the engine was
not running, and there were two males in the car. Cayton noticed that the passenger
“was looking around watching everything” and was “extremely nervous” and that as
Cayton initially drove through the parking lot, the passenger watched him the whole
time. 
          Cayton decided to approach the car and talk to appellant and the passenger “to
make sure they weren’t broke down” and to “see what they were waiting for.” Cayton
approached the driver’s side of appellant’s car as Teweleit approached the
passenger’s side. As he approached the car, Cayton noticed that “right outside the
driver’s window, which was down, there was a pile of – pieces of cigar,” indicating
that a cigar had been torn apart. Based on Cayton’s training and experience, he knew
that “people will buy cigars, empty them out, and then fill them with marihuana.” 
There were also pieces of cigar on the car window, and, when Cayton looked in the
car, he noticed pieces of the cigar inside the car and on the leg and lap of appellant. 
          Cayton asked appellant general questions concerning “what was going on” and
also “ran the [license] plate” on appellant’s car. Cayton noted that the plate indicated
that the car was from LaPorte, “which [was] nowhere near” the area and stated that
he “wanted to make sure [appellant] wasn’t having car trouble and just find out what
was going on, if he needed anything.” Appellant seemed “a little nervous” and the
passenger seemed “extremely nervous.” Appellant did not provide Cayton with
“definitive answers,” and appellant told Cayton that he was “hanging out in the area
with his home boy.”
          At some point during Cayton’s exchange with appellant, Teweleit, who was on
the other side of the car, told appellant to show his hands and exit the car. Cayton
took appellant to the back of the car, conducted a quick pat down “to search for
weapons,” and found nothing on appellant. After patting down appellant, and as
Cayton was standing at the rear of the car and “talking to [appellant],” Teweleit
walked around in front of appellant’s car, leaned inside, and came back out with a
small bag containing a green, leafy substance that Cayton knew, based on his training
and experience, to be marihuana. Teweleit also recovered a cigar that had been
shelled out and had marihuana inside of it.  
          Teweleit did not testify at the hearing, and Cayton testified that he did not
know why Teweleit had asked appellant to exit his car. However, Teweleit told
Cayton that when Teweleit had approached appellant’s car, he saw appellant “put his
right hand between the seat and the console and that’s when he had [appellant] exit
the vehicle.” When appellant exited the car and Cayton took appellant to the rear of
the car, Teweleit “immediately stepped around, reached down into the area where he
saw [appellant] put his hand, pulled out a small baggy” of marihuana, and walked to
the rear of the car with it. The passenger subsequently exited the car and after the
officers “ran [a computer check on] him,” they released him.
          On cross-examination, Cayton testified that appellant was parked “in an area
where people would park ordinarily” to go into the convenience store and that the
store was open at the time. Cayton stated that he stops people in the store’s parking
lot “quite a bit” and that he would drive by the station every day that he was on duty. 
He also stated that neither he nor Teweleit asked appellant for his consent to search
the car. 
Standard of Review
          The appropriate standard for reviewing a trial court’s ruling on a motion to
suppress evidence is bifurcated, giving almost total deference to a trial court’s
determination of historical facts and reviewing de novo the court’s application of the
law. Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). In reviewing a
ruling on a question of the application of law to facts, we review the evidence in the
light most favorable to the trial court’s ruling. Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997). However, we review de novo a trial court’s determination
of reasonable suspicion and probable cause. Id. at 87; Spight v. State, 76 S.W.3d 761,
765 (Tex. App.—Houston [1st Dist.] 2002, no pet.). At a suppression hearing, the
trial court is the sole and exclusive trier of fact and judge of the witnesses’ credibility.
Maxwell, 73 S.W.3d at 281. Accordingly, the trial court may choose to believe or to
disbelieve all or any part of a witness’s testimony. State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000).
          Here, the trial court denied appellant’s motion to suppress without stating the
basis for its order. The parties did not request, and the trial court did not make,
findings of fact and conclusions of law. When a trial court does not file findings of
fact, we view the evidence in the light most favorable to the trial court’s ruling and
assume that the trial court made implicit findings of fact that support its ruling as long
as those findings are supported by the record. Id. 
Reasonable Suspicion and Probable Cause
          In his sole issue, appellant argues, under the United States and Texas
Constitutions,


 that a Terry


 detention was not justified and that the officers did not
have the authority to conduct a warrantless search of his car because the officers did
not have probable cause to believe that the car contained evidence of a crime. The
State contends that the trial court properly denied the motion to suppress because the
officers had reasonable suspicion to justify an investigative detention and probable
cause to search appellant’s car after Teweleit saw appellant put his hand between the
seat and the center console of the car. The parties agreed during the hearing on the
motion to suppress that this case presented the issue of a warrantless detention and
search. 
          Circumstances short of probable cause may justify a temporary investigative
detention. Terry v. Ohio, 392 U.S. 1, 15, 88 S. Ct. 1868, 1877(1968); Stone v. State,
703 S.W.2d 652, 654 (Tex. Crim. App. 1986).


 A peace officer may make a
temporary investigative detention of an individual if the officer has a reasonable
suspicion “that there is something out of the ordinary occurring and some indication
that the unusual activity is related to crime.” Davis v. State, 947 S.W.2d 240, 244
(Tex. Crim. App. 1997) (citations omitted). The test for reasonable suspicion is a
factual one and is made and reviewed by considering the totality of the circumstances
at the time of the stop. Loesch v. State, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997). 
The reasonableness of a temporary detention “will be justified when the detaining
officer has specific articulable facts, which, taken together with rational inferences
from those facts, lead him to conclude that the person detained actually is, has been,
or soon will be engaged in criminal activity.” Woods v. State, 956 S.W.2d 33, 38
(Tex. Crim. App. 1997). These facts must amount to more than a mere hunch, a
guess, or a vague suspicion. Guevara v. State, 6 S.W.3d 759, 763 (Tex.
App.—Houston [1st Dist.] 1999, pet. ref’d). A detention not based on reasonable
suspicion is unreasonable and violates the Fourth Amendment. Davis, 947 S.W.2d
at 243. Investigative detentions become unreasonable when they are not reasonably
related in scope to the circumstances that justified the interference in the first place. 
Id. at 244. Thus, an investigative detention must be temporary and last no longer than
is necessary to effectuate the purpose of the stop and, once the reason for the
detention has been satisfied, the detention may not be used as a “fishing expedition
for unrelated criminal activity.” Id. at 243. 
          A warrantless search of an automobile is not unreasonable under the Fourth
Amendment when there is probable cause to believe that the vehicle contains
contraband or evidence of a crime. Carroll v. United States, 267 U.S. 132, 156, 45
S. Ct. 280, 286 (1925); Powell v. State, 898 S.W.2d 821, 827 (Tex. Crim. App. 1994);
Autry v. State, 21 S.W.3d 590, 592 (Tex. App.—Houston [1st Dist.] 2000, no pet.).


 
“Probable cause to search exists when reasonably trustworthy facts and circumstances
within the knowledge of the officer on the scene would lead a man of reasonable
prudence to believe that the instrumentality of a crime or evidence of a crime will be
found.” Estrada v. State, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005); see also
Moulden v. State, 576 S.W.2d 817, 819 (Tex. Crim. App. 1978); Dickey v. State, 96
S.W.3d 610, 613 (Tex. App.—Houston [1st Dist.] 2004, no pet.); Autry, 21 S.W.3d
at 592. Probable cause has also been described as “the sum total of layers of
information, and not merely individual layers and considerations, that a reasonable
and prudent man acts upon.” Estrada, 154 S.W.3d at 609. 
          In support of his contention that the search of his car was unreasonable,
appellant relies on Wiede v. State, 157 S.W.3d 87 (Tex. App.—Austin 2005, pet.
ref’d). In Wiede, a witness who stopped to help a driver injured in a car accident saw
the driver push an item with his uninjured arm between the console of the front seat. 
Id. at 92. When the driver was removed from the car and taken to an ambulance, the
witness told a police officer that he might want to check the seat because the driver
“was messing around with something there.” Id. The officer reached into the car and
pulled out a bag of narcotics. Id. at 92–93. The State sought to justify the search
based on the driver’s traffic violation of failure to control speed. Id. at 95. The
Austin Court of Appeals rejected this argument, holding that the State failed to
“produce evidence or articulate any reason to believe that a search of the
car—particularly, the space between the driver’s seat and the center console—would
produce additional evidence relevant to the offense of failing to control speed.” Id.
at 97. The court stated that “[t]he officer must have probable cause to believe that the
car contains evidence of the crime under investigation, not evidence of some
unrelated crime.” Id. 
          Alternatively, the State argued in Wiede that there was probable cause to search
car for a controlled substance based on the witnesses’s observation of the driver
“reach[ing] across his body with his uninjured arm while police were not watching
and hide something smaller than his fist between the driver’s seat and the center
console.” Id. The court noted that the Texas Court of Criminal Appeals “has
repeatedly held that a ‘furtive gesture’ . . . made while a person is stopped for a traffic
offense does not establish probable cause for a search.” Id. at 98 (citing Howard v.
State, 599 S.W.2d 597, 604–05 (Tex. Crim. App. 1979) (defendant dipped down in
seat toward steering wheel when stopped for failing to use turn signal); Beck v. State,
547 S.W.2d 266, 268–69 (Tex. Crim. App. 1976) (defendant reached toward glove
compartment when stopped for failing to use turn signal); Wilson v. State, 511 S.W.2d
531, 535 (Tex. Crim. App. 1974) (defendant moved hand between seats when stopped
for running red light). The court concluded that the furtive gesture made by the driver
was “not supportive of probable cause to search a vehicle ‘because of the ambiguous
and potentially innocent nature of such movements.’” Id. (citing Howard, 599
S.W.2d at 604); see also State v. Phillips, 752 S.W.2d 194, 196 (Tex. App.—Amarillo
1988, no pet.) (“Texas cases generally agree that an ambiguous furtive gesture is
insufficient to establish probable cause.”). 
          Here, Officer Cayton testified that he saw appellant sitting in a car in a
convenience store parking lot, which was a “hot spot” known for criminal activity,
at approximately 1:00 a.m. Cayton watched appellant’s car “for three to four
minutes” and decided to approach appellant to make sure that his car was not “broken
down.” He noted that the passenger in appellant’s car “was looking around watching
everything” and was “extremely nervous.” As he approached appellant’s car, he saw
a pile of pieces of cigar “right outside the driver’s window” and he knew from his
training and experience that “people will buy cigars, empty them out, and then fill
them with marihuana.” He also saw pieces of cigar on the car’s window and inside
the car on the leg and lap of appellant. When questioned, appellant seemed “a little
nervous” and did not provide Cayton with “definitive answers.” Teweleit told Cayton
that as Teweleit approached appellant’s car, he saw appellant “put his right hand
between the seat and the console and that’s when [Teweleit] told appellant to exit the
car.” 
          Although Wiede is factually distinguishable, the general principle that furtive
gestures alone do not establish probable cause for a search remains. In Autry, 21
S.W.3d at 591, a police officer noticed an illegally parked car while he was patrolling
an area known for narcotics trafficking. The officer saw the defendant sitting in the
driver’s seat. Id. The officer also noticed two other people, about 30 feet from the
car, performing what the officer believed, based on his experience, to be a narcotics
transaction. Id. When the officer returned to the scene a few minutes later, he saw
the defendant and one of the men who had been involved in the apparent narcotics
transaction standing outside of the car near a mobile home. Id. The officer asked the
defendant to retrieve his identification from his car. Id. While in his car, the
defendant reached for something under the armrest. Id. The officer then instructed
the defendant to get out of the car, patted him down, and found nothing. Id. The
officer told the defendant that he was free to leave, but detained the defendant’s car
until a narcotics dog could be brought to the scene. Id. About ten minutes later, the
dog indicated that it smelled narcotics in the car, and the officers located narcotics in
the car during a subsequent search. Id. The defendant did not consent to the officer’s
request to search the car. Id. This Court held that “once the patdown and search of
appellant’s person produced neither drugs nor weapons, the limit of the investigatory
detention was reached,” further detention of appellant or his car was impermissible,
and the search of the car was illegal. Id. at 592.
          Cayton’s testimony supports an implied finding by the trial court that Cayton’s
investigatory detention of appellant was justified. However, there is no evidence in
the record establishing that Teweleit had probable cause to believe that appellant’s
car contained contraband or evidence of a crime. Teweleit did not testify at the
motion to suppress hearing and there is no evidence that he saw “the pile of [] pieces
of cigar” that Cayton saw on the driver’s side of the car. There is also no evidence
that Teweleit, like Cayton, would have suspected the presence of narcotics based on
the presence of cigar pieces and the totality of the circumstances. Moreover, we note
that Cayton, who was clearly aware of the cigar pieces, did not order appellant out of
the car and, at the time, Cayton had no idea why Teweleit had ordered appellant out
of the car. Instead, the record indicates that Teweleit ordered appellant out of the car
and, after Cayton had removed appellant from the car and conducted a “quick pat
down,” searched the car based solely on his observation that appellant put his right
hand between the car’s seat and console. Accordingly, we hold that the evidence
presented at the motion to suppress hearing did not establish that Officer Teweleit had
probable cause to believe that appellant’s car contained contraband or evidence of a
crime.
          In reaching this holding, we are mindful that the Texas Court of Criminal
Appeals has stated: 
[W]hen there has been some cooperation between law enforcement
agencies or between members of the same agency, the sum of the
information known to the cooperating agencies or officers at the time of
an arrest or search by any of the officers involved is to be considered in
determining whether there was sufficient probable cause therefor.
 
Woodward v. State, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982).
          The court in Woodward further stated:
[C]ourts have had occasion to recognize that effective police work in
today’s highly mobile society requires cooperative utilization of police
resources. They have, accordingly, asserted that knowledge in one sector
of a police system can be availed of for action in another, assuming
some degree of communication between the two.
 
Id. (quoting Moreno-Vallejo v. United States, 414 F.2d 901, 904 (5th Cir.
1969)) (emphasis added).
          Here, the controlling authority is quite clear:
 When one officer relies solely on another officer’s request to arrest a
suspect, probable cause must be based on the requesting officer’s
knowledge . . . [and] [i]f the requesting officer has sufficient
information to establish probable cause, then the arresting officer’s
arrest will be justified.
 
Farmah v. State, 883 S.W.2d 674, 678 (Tex. Crim. App. 1994) (emphasis added); see
also Fearance v. State, 771 S.W.2d 486, 509 (Tex. Crim. App. 1988) (stating that, in
determining whether arresting officer had sufficient knowledge to reasonably believe
suspect had committed murder, court was not limited to considering arresting
officer’s personal knowledge because the arresting officer “could act upon the basis
of information relayed to him by other officers”) (emphasis added); Tarpley v. State,
565 S.W.2d 525, 529–30 (Tex. Crim. App. 1978) (“It is well established that an
officer who does not himself possess probable cause for making a warrantless arrest
may act upon the basis of information relayed to him by another officer requesting
that an arrest be made.”) (emphasis added); Willhite v. State, 937 S.W.2d 604, 607
(Tex. App.—Houston [1st Dist.] 1996, pet. ref’d) (stating that “a police officer who
does not possess probable cause himself to make a warrantless arrest, may rely on
information that is transmitted to him by other officers” and holding that “reasonable
suspicion may be transferred from one officer to another”) (emphasis added). In the
record before us, there is no evidence that Cayton communicated his suspicions to
Teweleit, that Tewleit saw the cigar pieces inside or outside of appellant’s car, that
Teweleit conducted the search at the direction or instruction of Cayton, or that
Teweleit and Cayton “cooperated” in the search of the car. In fact, Cayton’s
testimony established that Teweleit made a unilateral decision to search appellant’s
car based only on his own observation of a furtive gesture.
          Moreover, although the State does not, in its briefing to this Court, expressly
argue


 that the search of appellant’s car could be justified as a weapons search during
the course of an investigatory detention, it did make this argument at the motion to
suppress hearing. During the course of a lawful investigatory detention, an officer
may conduct a limited search for weapons where it is reasonably warranted for his
own safety or the safety of others. Terry, 392 U.S. at 27, 88 S. Ct. at 1883; Ramirez
v. State, 672 S.W.2d 480, 482 (Tex. Crim. App. 1984); Guevara, 6 S.W.3d at 764.           The United States Supreme Court has stated:
[T]here must be a narrowly drawn authority to permit a reasonable
search for weapons for the protection of the police officer, where he has
reason to believe that he is dealing with an armed and dangerous
individual, regardless of whether he has probable cause to arrest the
individual for a crime. The officer need not be absolutely certain that the
individual is armed; the issue is whether a reasonably prudent man in the
circumstances would be warranted in the belief that his safety or that of
others was in danger. And in determining whether the officer acted
reasonably in such circumstances, due weight must be given, not to his
inchoate and unparticularized suspicion or ‘hunch,’ but to the specific
reasonable inferences which he is entitled to draw from the facts in light
of his experience. 
 
Terry, 392 U.S. at 27, 88 S. Ct. at 1883. Citing Terry, the Court of Criminal Appeals
has recently emphasized that “there is no requirement that a police officer feel
personally threatened or be ‘absolutely certain’ that the suspect is armed in order to
conduct a pat-down search.” Glazner v. State, 175 S.W.3d 262, 265 (Tex. Crim. App.
2005). 
          Under certain circumstances, the right to conduct a protective search extends
to the passenger compartment of a detainee’s vehicle. Goodwin v. State, 799 S.W.2d
719, 728 (Tex. Crim. App. 1990); Horton v. State, 16 S.W.3d 848, 852 (Tex.
App.—Austin 2000, no pet.). The United States Supreme Court has explained:
[T]he search of the passenger compartment of an automobile, limited to
those areas in which a weapon may be placed or hidden, is permissible
if the police officer possesses a reasonable belief based on “specific and
articulable facts which, taken together with the rational inferences from
those facts, reasonably warrant” the officer in believing that the suspect
is dangerous and the suspect may gain immediate control of weapons.
 
Michigan v. Long, 463 U.S. 1032, 1049, 103 S. Ct. 3469, 3481 (1983) (citing Terry,
392 U.S. at 21, 88 S. Ct. at 1880). Thus, “the officer may conduct a protective search
of a detainee’s vehicle when he has a reasonable belief, based on specific and
articulable facts, that the detainee my pose a danger to the officer or to others.” 
Alexander v. State, 879 S.W.2d 338, 343 (Tex. App.—Houston [14th Dist.] 1994, pet.
ref’d) (citing Goodwin, 799 S.W.2d at 728). 
          Here, Cayton did not testify that he believed appellant or the passenger to be
dangerous or that he believed that appellant or the passenger might gain immediate
control of a weapon hidden in the car. In fact, as noted above, Teweleit, the only
officer to have observed appellant’s alleged movement in the car, did not even testify
at the suppression hearing. More importantly, the evidence in the record concerning
appellant’s movement and the possible reasons for conducting the search of
appellant’s car is extremely limited. Also, our inquiry is limited to the issue of
“whether a reasonably prudent man in the circumstances presented would have been
warranted in the belief that his or her safety was in danger.” See Glazner, 175 S.W.3d
at 265 (quoting Terry, 392 U.S. at 27, 88 S. Ct. at 1883). The record presented lacks
the detail necessary to support a finding that the officers reasonably believed, based
on specific and articulable facts, that appellant was dangerous or might gain
immediate control of a weapon. 
          The record in this case, in comparison to other cases wherein protective
weapon searches of passenger compartments of cars have been upheld, is simply not
sufficient to support the search of appellant’s car. For example, in Alexander, 879
S.W.2d at 340, police officers observed a parked car inside a park in violation of
curfew laws. When an officer approached the car, he saw the defendant “scrambling
as if he were trying to hide something under the seat.” Id. The officers removed the
defendant from the car and specifically checked the car for weapons in the area where
the defendant had been scrambling. Id. An officer testified that based on his
experience, after seeing the defendant’s movements he was “immediately concerned
that there might be a weapon.” Id. at 343. The court held that the officer “was
justified in conducting the weapons search to neutralize the possible danger” and that
the search was valid.
          Similarly, in Ramsey v. State, 806 S.W.2d 954, 958 (Tex. App.—Austin 1991,
pet. ref’d), when an officer stopped the defendant for a traffic violation, the officer
saw the defendant throw a shaving kit onto the floor board. The defendant appeared
disoriented and under the influence of drugs or narcotics. Id. at 955. The officer
testified that he removed the shaving kit “for [his] safety” because he “assumed it
might contain a weapon due to the size of it” and because the driver had attempted
to hide it from him. Id. The court held that the officer “was in possession of specific
and articulable facts to warrant a reasonable belief that the defendant posed a danger”
and that “the officer acted reasonably in taking preventative measures to ensure that
there were no weapons within appellant’s grasp before allowing appellant to return
to his car.” Id. at 958.
          Here, unlike the above cases, the record is simply insufficient to support a
finding that a reasonably prudent man in the circumstances would have been
warranted in the belief that his safety was in danger. Again, Officer Cayton’s
testimony establishes that Officer Teweleit made a unilateral decision to search
appellant’s car based only on his observation of a furtive gesture. The record
contains no evidence that Teweleit had a reasonable belief that he was in danger and
was taking preventative measures to ensure that there were no weapons in the car.
Accordingly, we hold that officer Teweleit’s search, conducted on this basis, was not
justified under the Fourth Amendment. 
          We sustain appellant’s sole issue.
Conclusion
          We reverse the judgment of the trial court and remand the case for further
proceedings consistent with this opinion.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Jennings and Alcala.

Publish. Tex. R. App. P. 47.2(b).