Opinion issued February 7, 2017



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-15-01100-CR

_____

**LAQUANDA ANTRONES MATTHEWS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Case No. 11CR2236

## MEMORANDUM OPINION

A jury found appellant, Laquanda Antrones Matthews, guilty of evading arrest and sentenced her to 22 months in the state jail. In three points of error, appellant argues that the (1) evidence is legally insufficient; (2) trial court erred in

overruling a requested instruction on spoliation; and (3) trial court erred in overruling her hearsay objection.

We affirm.

## Background

On August 5, 2011, Officer E. Cisneros, a peace officer with the Texas City Police Department, was working the front desk at the police station when he heard a commotion. Someone later notified him that a woman with outstanding municipal warrants was trying to leave the front lobby. Officer Cisneros, who was wearing his uniform, testified that he went into the lobby and followed appellant, who was walking at a fast pace, into the parking lot. Officer Cisneros testified that upon leaving the police station, he kept asking appellant to stop, in a raised voice, and that "she was under arrest because she had municipal warrants for her arrest." Officer Cisneros testified that when he caught up with her, she seemed upset and said that "she wanted to get her purse out of her car before she was arrested." He then allowed her to get her purse, but told her to hurry. Instead of grabbing her purse, appellant started the vehicle, and Officer Cisneros tried to stop her by reaching in the vehicle and grabbing appellant by the arms. At the same time, appellant drove in reverse causing Officer Cisneros, who was standing "right behind the window seal of the vehicle," to fall back. Appellant then cut the wheel

2

and drove off.  Officer Cisneros testified that as a patrol officer, he has a duty to arrest people with warrants and that he was lawfully discharging his duty.

Latosha Harris testified that on August 5, 2011, she had been performing community service at the police station because of traffic tickets.  Harris recalled that appellant was pacing around the lobby of the police station and appeared frustrated because the police were not working fast enough to help her with debit cards that she had found.  Harris attempted to calm appellant down, but appellant began walking around faster until she went to the bathroom.  When appellant left the bathroom, she became "irritated."  Harris testified that a police employee tried to calm her down, but the employee eventually left to get a police officer.  Harris explained that once Officer Cisneros appeared in the lobby, appellant's actions started to get "amplified."  Harris testified that Officer Cisneros asked appellant for her name and that "[t]hey would get into it.  And [appellant] would refuse to give him her information."  Harris testified that after appellant refused to give her information, appellant left by running out the door, followed by Officer Cisneros.  Harris then stood in the doorway and watched appellant get into a vehicle.  Officer Cisneros attempted to stop her and was leaning into the vehicle that had the door half-open.  Harris testified that as appellant started to reverse, the vehicle's door and the side of the vehicle hit Officer Cisneros, causing him to fall.

Melvin Ann Lewis, the courtroom coordinator and assistant supervisor at the Texas City Municipal Court of Records, testified that on August 5, 2001, while she had been working in her office, someone said that a person at the front window had warrants and that she needed to run their name. After she printed the list, she took it to the officer's station in the front lobby "so that [an officer] could detain the subject."

Megan Gillespie, the administrative assistant to the Criminal Investigation Division, testified that on August 5, 2001, while she had been taking a break in her vehicle, she heard loud screaming and saw appellant walking across the parking lot. She also saw Officer Cisneros following her and telling appellant to stop. After appellant entered a vehicle, she heard Officer Cisneros say, "Stop. Get out of the vehicle." Then she heard "screeching" and the vehicle started backing up while Officer Cisneros tried to "keep his footing as he's running backwards." Gillepsie testified that appellant drove away while Officer Cisneros was "hollering for her to stop."

Sergeant R. Spottedbear testified that on August 5, 2011, he heard a radio call from an officer who had almost been run over, and the vehicle was in the process of fleeing from the scene at the police station. Sergeant Spottedbear saw the vehicle speeding out of the front parking lot onto 10th Street, at which time he activated his overhead lights and began a police pursuit. Sergeant Spottedbear

4

explained that once he got behind appellant's vehicle, the vehicle sped up "in an effort to evade . . . me." He testified that "the driver of the car sped up and gave the appearance to me that they were trying to get away from me." After appellant pulled over, she exited the vehicle and ran toward a house. Sergeant Spottedbear stopped his patrol car and chased appellant on foot, yelled at her to stop, and identified himself as a police officer. As appellant nearly made her way into the front door of a house, Sergeant Spottedbear pushed her on the shoulder, causing her to fall.

Another police officer arrived at the scene, and appellant continued to resist both officers' attempts to subdue her. Appellant was eventually handcuffed and secured in a patrol car. Based on Sergeant Spottedbear's observations, he believed that appellant "absolutely" intentionally fled both he and Officer Cisneros.

## Legal Sufficiency

In her first point of error, appellant challenges the legal sufficiency of the evidence. Specifically, appellant argues that the State failed to produce legally sufficient evidence that "justify the actions of Officer Cisneros."

**Standard of Review**

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id*.

**Evading Arrest**

To establish that appellant committed the offense of evading arrest, as charged in the indictment, the State had to prove that appellant intentionally fled from Officer Cisneros, whom appellant knew to be a peace officer, while Officer Cisneros was attempting lawfully to arrest or detain appellant and that appellant used a motor vehicle while in flight. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(1) (West Supp. 2016) ("A person commits an offense if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him."); *Mims v. State*, 434 S.W.3d 265, 269 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

6

"A person commits a crime under section 38.04 only if he knows that a police officer is attempting to arrest him but nevertheless refuses to yield to a police show of authority." *Thompson v. State*, 426 S.W.3d 206, 209 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Evidence that a police officer is asserting authority and attempting to arrest or detain an individual includes use of emergency lights and sirens, pointing to a driver to pull the vehicle over, and issuing verbal commands. *Duvall v. State*, 367 S.W.3d 509, 513 (Tex. App.—Texarkana 2012, pet. ref'd). "'[F]leeing' is 'anything less than prompt compliance with an officer's direction to stop,' and 'fleeing slowly is still fleeing.'" *Lopez v. State*, 415 S.W.3d 495, 497 (Tex. App.—San Antonio 2013, no pet.) (quoting *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.) and *Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.—Texarkana 2007, no pet.)); *see also Baines v. State*, 418 S.W.3d 663, 670 (Tex. App.—Texarkana 2010, pet. ref'd) ("The relevant inquiry is whether there was an attempt to flee or delay the detention."). Courts may consider speed, distance, and duration of pursuit in determining whether a defendant intentionally fled, but "no particular speed, distance, or duration is required to show the requisite intent if other evidence establishes such intent." *Griego v. State*, 345 S.W.3d 742, 751 (Tex. App.—Amarillo 2011, no pet.); *Mayfield*, 219 S.W.3d at 541 ("The statute does not

require high-speed fleeing, or even effectual fleeing. It requires only an attempt to get away from a known officer of the law.").

The State bears the burden to prove the lawfulness of the attempted detention. *Crawford v. State*, 355 S.W.3d 193, 196 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). A detention for the purpose of investigating possible criminal behavior is lawful when the police officer can point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant the intrusion. *Id.*; *see also Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884–85 (1968). The facts must amount to more than a mere hunch, a guess, or a vague suspicion. *Canales v. State*, 221 S.W.3d 194, 199 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We review de novo the legal question of whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion to detain a person. *Crawford*, 355 S.W.3d at 196.

Here, Officer Cisneros testified that a person informed him that a woman was causing a commotion in the lobby, she had outstanding warrants, and that she was attempting to leave. Officer Cisneros left his desk to investigate and followed appellant outside into the parking lot while telling her to stop in a raised voice. He testified that during this time, he was in uniform, that she walked at a fast pace toward a vehicle, and that she was under arrest because she had municipal warrants for her arrest. He testified that he has a duty to arrest someone with outstanding

warrants and that he was lawfully discharging his duty. When she reached her vehicle, appellant told Officer Cisneros that she "wanted to get her purse out of her car before she was arrested." Although she said she was going to grab her purse, appellant started the vehicle and drove in reverse while Officer Cisneros yelled for her to stop and attempted to remove her from the vehicle. Officer Cisneros lost his footing and nearly got run over by appellant's vehicle as appellant fled the parking lot in her vehicle.

Based on this evidence, Officer Cisneros had justification to temporarily detain appellant, thus satisfying the lawfully-detain element of evading arrest. *See Tolbert v. State*, No. 08–10–00096–CR, 2001 WL 3807740, at *3 (Tex. App.—El Paso Aug. 26, 2011, pet. ref'd) (concluding evidence legally sufficient of evading arrest when appellant ignored officer's instructions to stop multiple times, resisted officer's attempts to physically restrain appellant, refused to cooperate, and matched description of individual causing disturbance). Moreover, appellant's flight from Officer Cisneros, after he ordered appellant to stop, provided Officer Cisneros with probable cause to believe that appellant was evading arrest or detention. *See Reyes v. State*, 899 S.W.2d 319, 324 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (stating flight from show of authority is a factor in support of finding reasonable suspicion of criminal activity).

9

Despite this evidence, appellant argues, however, that the record did not show that the "alleged warrants" existed or that if they did, they were sufficient under the Texas Code of Criminal Procedure. Appellant does not cite any authority that the State had to offer warrants at trial to obtain a conviction for evading arrest. *See* TEX. R. APP. P. 38.1(i). We note that even if Officer Cisneros was mistaken that appellant had warrants for her arrest, he could still detain appellant if he reasonably believed that his actions were lawful.[1] *See Robinson v. State*, 377 S.W.3d 712, 720–21 (Tex. Crim. App. 2012) ("A mistake about the facts, *if* reasonable, will not vitiate an officer's actions in hindsight so long as his actions were lawful under the facts as he reasonably, albeit mistakenly, perceived them to be.").

Viewing the evidence in the light most favorable to the verdict, as we must, we conclude that a reasonable jury could have found that appellant knew that Officer Cisneros was attempting to lawfully detain or arrest her and that she intentionally fled from the officer in a motor vehicle. We hold that the State presented legally sufficient evidence to support the conviction for evading arrest.

We overrule appellant's first point of error.

---

[1] Appellant also argues that Sergeant R. Spottedbear's testimony did not support a conviction for evading arrest. This argument is misplaced because the State only had to prove that appellant evaded arrest of Officer Cisneros, and not Sergeant Spottedbear.

**Requested Instruction**

In her second point of error, appellant argues that the trial court erred in overruling appellant's requested instruction on spoliation. Appellant requested a jury instruction on spoliation because she alleged that the police did not preserve a videotape of the parking lot that would have "confirmed—or refuted—Officer Cisneros' awkward explanation of exactly why he did not get around to shooting Ms. Matthews *over an alleged municipal warrant*."

**Standard of Review**

In analyzing a jury-charge issue, we first determine whether error exists. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984) (op. on reh'g); *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). If we find error, then we consider whether the error was harmful under the appropriate standard. *Tottenham*, 285 S.W.3d at 30; *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal.").

When charging the jury, a trial court must instruct it on the "law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The trial court is not required to instruct the jury on defensive issues sua sponte, even if they are raised by the evidence. *Jackson v. State*, 288 S.W.3d 60, 63 (Tex. App.—Houston

[1st Dist.] 2009, pet. ref'd) (citing *Oursbourn v. State*, 259 S.W.3d 159, 179 (Tex. Crim. App. 2008)).

**Spoliation**

The State has no duty to preserve evidence unless its exculpatory value is apparent at the time of its destruction. *California v. Trombetta*, 467 U.S. 479, 488–89, 104 S. Ct. 2528, 2534 (1984); *White v. State*, 125 S.W.3d 41, 43 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). The defendant claiming spoliation of evidence must show that the lost evidence was favorable and material to his defense, such that if it were disclosed, there is a reasonable probability of a different result. *See Higginbotham v. State*, 416 S.W.3d 921, 924 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Further, to be entitled to relief, the defendant must show that in failing to preserve the material and favorable evidence, the State acted in bad faith. *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008) (citing *Arizona v. Youngblood*, 488 U.S. 51, 57–58, 109 S. Ct. 333, 337–38 (1988)).

The record reflects that appellant requested an instruction on spoliation, which the trial court denied. Multiple witnesses were asked whether the lobby or parking lot had cameras. Officer Cisneros agreed that the parking lot had a camera, but he did not know where it recorded. Although he was uncertain, Officer Cisneros testified that he did not think the camera was recording on August

5, 2011. He said someone else looked for the video footage, he did not know who tried to find it, and that he did not try and find it. He also agreed that the lobby had cameras, but he did not know if they recorded and did not remember if he did or did not see any camera footage. Sergeant Spottedbear was asked if it was somebody's job to investigate video evidence to which he responded that they generally try to obtain video. Sergeant Spottedbear also agreed that he did not follow up to see if the parking lot had any video recordings.

When asked if he looked to see if any parking lot video recordings had been made, Corporal L. Crow, an employee at the Texas City Police Department, testified that he was "under the impression that [the camera] was strictly for a monitoring—I wasn't aware that the camera system recorded." He admitted that he did not go look to see. On cross-examination by the State, Crow identified the exterior camera in the parking lot, and he identified a picture that showed the parking spot where the events transpired. He then testified that the parking spot was not visible from the camera. He stated, "The parking lot faces the—that's—you're looking at—towards the south towards the plants. So, that doesn't even cover that area." Crow agreed the whole point of the camera is for police to see cars coming in through the entrance and exit.

John Brussard, a dispatch supervisor and systems administrator for records management at the Texas City Police Department, stated that State's exhibit 15

showed an image from the camera at the front of the police department, but he could not say if the camera was mounted in the same position in August 2011. Brussard answered that the camera was capable of recording, but he could not say for sure that it was recording.

On cross-examination, Lewis admitted that the lobby has video cameras that record, but she has not seen them. Gillespie also stated that she did not know if the parking lot has a camera, but she believes the lobby has cameras.

In sum, none of the witnesses testified that a video recording from any camera existed, that it was discarded, or if a video recording had been taken, what the video depicted. Rather, each witness testified that they were either unsure of any cameras, unsure of whether it recorded, that they did not find any recordings, and that the camera could not record where the events transpired. The State is not required to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist. *Hafdahl v. State*, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990). Because appellant did not produce any evidence that a video existed, that the State destroyed it, and that the video would have been exculpatory, the trial court did not commit error in refusing the spoliation instruction. *See Evans v. State*, No. 01–13–00593–CR, 2015 WL 1501808, at *6 (Tex. App.—Houston [1st Dist.] Mar. 31, 2015, pet. ref'd) (holding that State had no duty to disclose evidence that did not exist). Moreover, appellant

14

neither showed, nor argued that the State acted in bad faith. *See White*, 125 S.W.3d at 44 (stating that "failure to preserve potentially useful evidence does not constitute a denial of due process unless appellant can show bad faith on the part of the State"). Based on this record, we cannot conclude that the trial court committed error in refusing appellant's spoliation instruction.[2]

We overrule appellant's second point of error.

## Evidence

In her third point of error, appellant argues that the trial court erred in overruling her hearsay objection. Specifically, appellant argues that the State elicited testimony that appellant had arrest warrants, which constituted inadmissible hearsay.

**Standard of Review**

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd). We will uphold the trial court's ruling unless it falls outside the

---

[2] In her appellate brief, appellant asserts a number of constitutional complaints to the lack of a spoliation instruction. These complaints were not asserted at trial and thus waived. *See* TEX. R. APP. P. 33.1; *Castilla v. State*, 374 S.W.3d 537, 542 (Tex. App.—San Antonio 2012, pet. ref'd) (holding that appellant waived constitutional arguments presented for first time on appeal).

15

"zone of reasonable disagreement." *Tillman*, 354 S.W.3d at 435; *Walker*, 321 S.W.3d at 22.

To preserve the issue of erroneously admitted evidence, a party must make a timely and specific objection and receive a ruling from the trial court. TEX. R. APP. P. 33.1; *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). The party must object every time the evidence is offered. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).

"The erroneous admission of a hearsay statement constitutes nonconstitutional error that is subject to a harm analysis." *Coleman v. State*, 428 S.W.3d 151, 162 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). "We do not overturn a conviction if, after examining the record as a whole, we have fair assurance that the error did not influence the verdict or had but a slight effect." *Id.*

Appellant's argument concerns the following exchange:

> [State]: And can you explain to the jury how you got involved in this situation?
>
> [Lewis]: Someone came to my office and said that there was a problem at the front window. Someone had warrants and I needed to run their name. At that time I ran the subject's name. I printed the disposition page, which has a listing—
>
> [Appellant]: Objection, hearsay.
>
> [Appellant]: Of the charges.

16

[Court]:     Just a moment.

[Appellant]: Objection, hearsay.

[Court]:     To what?

[Appellant]: As to what's on the document that she printed out.

[Court]:     Is it being offered for the truth of the matter?

[State]:     It's not being offered for the truth of the matter, your honor.

[Court]:     Overruled.

In its next question, the State asked Lewis if she printed the list to which Lewis responded, "yes." The State never offered the list into evidence.

Appellant argues that "the trial court erred in overruling the defendant's hearsay objection as to the content of an alleged list of warrants."

Hearsay is a statement that (1) the declarant does not make while testifying at the current trial and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). Here, the State never sought to offer or admit the content from any list into evidence. Lewis explained that she printed a list of charges, but the list was not offered or admitted and therefore could not constitute hearsay.

Moreover, a statement not offered to prove the truth of the matter asserted is not hearsay. *Dinkins v. State*, 894 S.W.2d 330, 347–48 (Tex. Crim. App. 1995).

17

Out-of-court statements and documents that show how a defendant became a suspect are not inadmissible hearsay because they are not admitted to show the truth of the matter asserted, but are admitted as circumstantial evidence from which an inference may be drawn. *Id*. at 347 (murder victim's appointment book and patient application not inadmissible hearsay because they showed how appellant became suspect in murder investigation and were not admitted to show truth of matter asserted). Similarly, the document referred to by Lewis showed how appellant became a suspect and was not offered to prove the truth of the matter asserted therein. Thus, we conclude that the trial court did not abuse its discretion in overruling appellant's hearsay objection.

We overrule appellant's third point of error.

## Conclusion

We affirm the judgment of the trial court.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Bland.

Do not publish. *See* TEX. R. APP. P. 47.1(b).